L. E. THACKER

*v.*

GEORGE BURTON CROW, WEST VIRGINIA NONINTOXICATING BEER COMMISSIONER

(No. 10768)

Submitted September 27, 1955. Decided November 29, 1955.

*Jackson D. Altizer, J. J. N. Quinlan,* for relator.

*John G. Fox,* Attorney General, *Virginia Mae Brown,* Assistant Attorney General, for respondent.

GIVEN, JUDGE:

In this original proceeding in mandamus petitioner, L. E. Thacker, prays a peremptory writ requiring defendant, George Burton Crow, West Virginia Nonintoxicating Beer Commissioner, to transfer a Class A State nonintoxicating beer license, theretofore issued to him for an establishment in West Hamlin, Lincoln County, formerly operated by him, to an establishment leased by petitioner situated west of Hamlin, Lincoln County, on State Route No. 3. No disputed question of fact is involved. The case was submitted for decision upon the pleadings, briefs and oral arguments.

The allegations contained in the petition filed are to the following effect: That petitioner has been the holder of a Class A State nonintoxicating beer license, No. 2833, for over two and one half years, licensing him to operate as a nonintoxicating beer dealer at an establishment in West Hamlin; that he has ceased to operate the business in West Hamlin and has applied to defendant for a transfer of the license to a building situated on the premises leased by him just west of the town of Hamlin; that he has complied with all statutory and other requirements entitling him to such transfer of his license; that the nonintoxicating beer commissioner has "capriciously, unlawfully, and arbitrarily refused to issue a permit and transfer of the aforesaid license, wrongfully asserting that the leased premises, aforesaid, is a place within three hundred feet (300) of a church or school * * *"; and that no church or school is located within three hundred feet of the premises so leased.

The answer of defendant makes it clear that the only basis for the denial of the transfer or the issuance of a license for the new or leased premises, is "that the proposed establishment is located within three hundred (300) feet of a tract of land on which no buildings are located and which is rented by the Lincoln County Board of Education, 'for Phy Ed and ball games in the amount of $700.00 rent for the year for use of Hamlin and Duval High *School.*'" From the record it further appears that the parcel of land so leased by the Board of Education, referred to in the record as a football field, is used by "boys and girls, particularly boys, between the seventh and twelfth grades, inclusive * * * [who] * * * are receiving physical education training under the supervision of instructors of Hamlin High School"; that "said tract is also used by the elementary schools for spring softball tournaments and often for marble tournaments * * * and for football games at night."

The parcel of land wherein the football field and the playground are located is owned by the Hamlin Lions Club, but certain rights to the use thereof on occasions are leased to the board of education of Lincoln County. At other times, the land is used for certain other purposes by the owner and by other persons. The entrance to the football field is about two hundred five feet from the building wherein the proposed nonintoxicating beer business is planned to be conducted. The playground, a part of the field, is north of the football field and is at least three hundred sixty feet from the entrance to the football field, and a distance of at least five hundred fifty feet from the building in which the petitioner proposes to operate his business. As above noticed, no building is located on the football field or playground and no school building or church building is located within three hundred feet of the single entrance to the field.

By letter of August 17, 1955, addressed to the commissioner, the superintendent of the Lincoln County schools advised the commissioner to the effect that the

transfer of the license of petitioner to the premises leased, for which the transfer is sought, was not opposed by the board of education or the school authorities of Lincoln County. The prosecuting attorney of Lincoln County appears to have taken the same position by the approval of that letter.

At the First Extraordinary Session of the 1933 Legislature, by Chapter 20, a comprehensive act was passed, regulating the sale of nonintoxicating beer, and the licensing of such sales. The comprehensive nonintoxicating beer act, as amended, is contained in Article 16 of Chapter 11 of Michie's 1955 Code of West Virginia. Section 11 of that article reads: "No license issued under the provisions of this article shall be transferred to another person, nor shall the location of the premises to which the license relates be changed without the written consent of the tax commissioner, which consent may be refused, in his discretion." Section 12 of that article, in so far as pertinent, reads: "A license may be issued by the commissioner to any person who submits an application therefor, accompanied by a license fee, and, where required, a bond, stating under oath: * * * (e) That the place or buildings in which it is proposed to do business conforms to all laws of health and fire regulations applicable thereto, and is a safe and proper place or building, and is not within three hundred feet of any school or church, measured from front door to front door, along the street or streets: Provided, however, that this requirement shall not apply to a class B licensee, or to any place now occupied by a beer licensee, so long as it is continuously so occupied; * * * The foregoing provisions and requirements are mandatory prerequisites for the issuance of a license, and in the event any applicant fails to qualify under the same, license shall be refused * * *".

As will clearly appear from the facts stated, the only basis existing on which the commissioner attempts to justify his refusal of consent to the transfer of the

license is the proximity of the parcel of land leased by the board of education of Lincoln County to the building wherein petitioner proposes to operate the nonintoxicating beer business. The contention is that the school activities for which the field is used by the board of education constitute the field a school within the meaning of the statute quoted above, and, since the entrance to the field is less than three hundred feet from the building leased by petitioner, in which the sale of nonintoxicating beer is intended to be made, the statute forbids the transfer or issuance of a license for such a business to be operated in that building.

Statutes requiring a license or imposing a tax are strictly construed against the State. *Fry* v. *City of Ronceverte,* 93 W. Va. 388, 117 S. E. 140. Unless prohibited by statute or good reasons be shown against the same, a person holding a license authorizing him to engage in a certain business is entitled to a transfer of the license to a new place of business. *Drew* v. *City of Mount Hope,* 114 W. Va. 135, 171 S. E. 743. Of course, if good cause be shown against such transfer, such, for example, as would justify the refusal to grant a license in the first instance, the transfer should be denied. Where a license to operate a certain business is required, and the applicant has complied with all necessary requirements entitling him to such a license, and no valid reason or good cause is shown against the issuance thereof, the license should issue. *State ex rel. Hoffman* v. *Town of Clendenin,* 92 W. Va. 618, 115 S. E. 583, 29 A. L. R. 37; *State ex rel. Haddad* v. *City of Charleston,* 92 W. Va. 57, 114 S. E. 378, 27 A. L. R. 323; *Houvouras* v. *City of Huntington,* 90 W. Va. 245, 110 S. E. 692.

In *Beverly Grill* v. *Crow,* 133 W. Va. 214, 57 S. E. 2d 244, the nonintoxicating beer commissioner had refused to issue a license for the reason that "a great number or majority of citizens feels the outlet is too close to its schools and churches". In that case it was shown that schools and churches were located within two hundred feet from the establishment for which the license was

sought. The statutory provision quoted above relating to the granting of such a license as to an establishment "within three hundred feet of any school or church, measured from front door to front door, along the street or streets", did not become effective until after the decision in that case. There was, however, at the time of the refusal of the license, in effect a regulation promulgated by the commissioner by virtue of statutory authority, which provided that such a license might be refused as to an "establishment in reasonable close proximity to churches, schools, state institutions, privately operated charitable or eleemosynary institutions". The Court, in awarding a peremptory writ requiring the issuance of the license, said: "* * * The sale of beer at retail, when duly licensed, is a lawful business, made so by the statutes of this State; and the right of the applicant to a license to engage in it can not be ignored or nullified by official action based on its unpopularity in the community in which it is located. To permit such action would render possible the destruction of any or every lawful but locally unpopular business enterprise in any or every locality in the State. The denial of the license by the commissioner for the reason that to grant it, as required by a locally unpopular statute, would offend numerous people of the locality and meet with popular disapproval is not the proper exercise of discretion which the law requires but, from the standpoint of the law, is arbitrary and capricious action * * *".

The defendant, to sustain his action in refusing the transfer of the license, relies heavily on cases like *Moyer* v. *Board of Education*, 391 Ill. 156, 62 N. E. 2d 802; *Staiger* v. *Liquor Control Commission*, 336 Mich. 630, 59 N. W. 2d 26; and the *Appeal of Ganaposki*, 332 Pa. 550, 2 A. 2d 742, 119 A. L. R. 815, holding, in effect, that activities in athletics and instruction in physical education may be considered as public school activities, and cases like *Boys' Clubs of Detroit* v. *Pakula*, 342 Mich. 150, 69 N. W. 2d 348; *Stubbs* v. *Texas Liquor Control Board*

(Texas), 166 S. W. 2d 178, holding, in effect, that statutes similar to the one here involved should be given a liberal interpretation with a view of achieving the purposes intended by the Legislature. Perhaps, if these questions were before us, we might agree with these holdings. We think, however, that the plain wording of our statute permits no interpretation. We have no right, power or desire to read into the statute a meaning foreign thereto.

Clearly, a parcel of ground, a play field, does not constitute a school even though used for certain activities deemed educational. Neither can the words "front door to front door" be changed to mean "entrance" to a field or parcel of ground used for physical training. By use of the word "door" the Legislature clearly intended to refer to a building, not to an entrance to a playground, or a field, and by mandatorily requiring the refusal of a license to an establishment within three hundred feet from a school or church, implied that unless other good cause existed therefor, such a license should not be refused for an establishment more than three hundred feet from a school or church. This being true, and there being no other basis for the denial of the transfer sought by petitioner, we are of the opinion that the action of the nonintoxicating beer commissioner was, within the meaning of the law, arbitrary and capricious.

We have noticed that there existed, at the time of the denial of the transfer, a regulation promulgated by the nonintoxicating beer commissioner which prohibited the commissioner from issuing or transferring such a license to an establishment "within 300 feet of any church or school". The regulation, however, does not attempt to do more than to follow the statutory provision, and, of course, could not have been accorded a meaning in conflict with the provisions of the statute.

The action of the West Virginia Nonintoxicating Beer Commissioner in refusing to grant the transfer of the

license, as prayed for in the petition, having been found to be arbitrary and capricious, the peremptory writ prayed for will be awarded.

*Writ awarded.*